## In re FIRST INTERREGIONAL EQUITY CORPORATION, Debtor.

### Adversary No. 97–2165.

United States Bankruptcy Court, D. New Jersey.

Nov. 10, 1997.

. McCarter & English by Hayden Smith, Jr., Newark, NJ, for Richard W. Hill, SIPA Trustee for First Interregional Equity Corp.

Securities Investor Protection Corporation by Stephen P. Harbeck, Washington, DC, for Securities Investor Protection Corporation ("SIPC").

Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A. by Jack M. Zackin, Andrew H. Sherman, Newark, NJ, for Harrison J. Goldin, Chapter 11 Trustee of First Interregional Advisors Corp.

Cole, Schotz, Meisel, Forman & Leonard, P.C. by Stuart Komrower, Hackensack, NJ, for Official Committee of Unsecured Creditors of First Interregional Advisors Corporation.

Rabinowitz, Trenk, Lubetkin & Tully, P.C. by Jonathan I. Rabinowitz, West Orange, NJ, for Thomas Hessert, Marilyn Hessert, TJH Investment Corporation and TJ Hessert Construction Salaried Employees Trust.

## OPINION

ROSEMARY GAMBARDELLA, Bankruptcy Judge.

Presently before this Court are the Motions of both the Chapter 11 Trustee of First Interregional Advisors Corporation ("FIAC") and FIAC's Unsecured Creditors' Committee to intervene in the Security Investors Protection Act of 1970 ("SIPA") proceedings of First Interregional Equity Corporation ("FIEC") with respect to all matters pertaining to the status, allowability, or validity of the claims of investors who invested in leases through representatives of FIEC and who have, or may have, claims under SIPA and particularly in a pending motion by certain investors in leases seeking approval of a class proof of claim on behalf of all investors.[1] A

---

1. Both the Chapter 11 Trustee and the Unsecured Creditors' Committee have filed motions to

hearing was conducted on October 27, 1997. The following constitutes this Court's findings of fact and conclusions of law.

## FACTS

FIEC was a registered broker-dealer engaged primarily in the sale of fixed-income investment products, including municipal bonds. FIEC later became involved in the sale of personal property in which municipal governmental entities were the lessees. Initially, FIEC purchased leases from "brokers" and sold assignments to those leases to the public. The leasing companies which acted as brokers to FIEC would service the leases and collect payments on behalf of FIEC which, in turn, would forward the income stream from the leases to its investors.

FIAC was originally a subsidiary of FIEC created in 1992 to handle the leasing aspects of FIEC's business. Eventually, based upon regulatory concerns and the growth of the leasing operations, FIAC was spun off into a separate corporation.

On March 5, 1997, FIAC filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Code") in the United States Bankruptcy Court for the District Of New Jersey.

As of the date FIAC filed its Chapter 11 petition, there were thousands of investors who purchased what they believed to be interest in leases. The SEC has alleged, and the Trustee has confirmed, that FIAC's principals engineered a massive fraudulent scheme whereby numerous interest in the same leases were sold to multiple investors. These investors comprise the majority of the creditor body of FIAC's estate.

On March 6, 1997, the Securities and Exchange Commission (the "SEC") filed a complaint in the United States District Court for the District of New Jersey against FIAC, FIEC, and Richard Goettlich alleging, *inter* *alia*, that the defendants participated in a massive fraudulent scheme.

On March 10, 1997, following the filing by the Securities Investor Protection Corporation ("SIPC") of an Order to Show Cause, the Honorable Maryanne Trump Barry, U.S.D.J., entered an Order adjudicating that the customers of FIEC are in need of the protection afforded by the SIPA. On the same day, Richard W. Hill was appointed Trustee (the "SIPA Trustee") for the liquidation of FIEC's business.

On March 11, 1997, a meeting of FIAC's twenty (20) largest unsecured creditors was held at the office of the U.S. Trustee. At that time, the committee was constituted and appointed by the U.S. Trustee pursuant to Section 1102 of the Code. The Committee selected and retained Cole, Schotz, Meisel Forman & Leonard, P.A. as its counsel.

On March 13, 1997, this Court entered an Order directing the appointment of a Chapter 11 operating trustee for FIAC pursuant to Section 1104 of the Code. Thereafter, Harrison J. Goldin was appointed Chapter 11 Trustee (the Chapter 11 Trustee) and duly qualified.

By Notice dated May 19, 1997, the SIPA Trustee advised customers and creditors of FIEC that July 18, 1997 was fixed as the final date for filing "customer claims" under SIPA, and that November 19, 1997 was fixed as the final day for filing any claims (including customer claims) under SIPA.

Among the claims filed in the FIEC case by lease investors are those filed by Thomas Hessert, Marilyn Hessert, TJH Investment Corporation, and TJ Hessert Construction Salaried Employees Trust, who have indicated their willingness to serve as named plaintiffs (the "Class Plaintiffs") in a class action contested matter to determine the class members' rights and interest.[2]

intervene in a pending motion by certain investors in leases seeking approval of a class proof of claim on behalf of all investors who invested in leases and/or lease obligations from sales representatives of FIEC. Determination of the propriety of a class claim has been adjourned by stipulation of the parties pending further discovery. Accordingly, the question whether intervention is permissible in that action is not before the Court today.

2. The moving parties in their papers move for the Court to determine the Propriety of the Class Claim. Pursuant to a stipulation between respective counsel for the SIPA Trustee and the Chapter 11 Trustee, and the Hesserts, the Motion

## DISCUSSION

### I. Methods of Intervention:

There are three possible methods by which a movant seeking intervention may properly do so:

#### A. Intervention as of Right:

 Section § 1109(b) of the Bankruptcy Code provides as follows:

A party in interest, including the debtor, trustee, creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case *under this chapter.*

11 U.S.C. § 1109(b)(emphasis added). "The general theory behind this section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity ... to participate in the adjudication of any issue that ultimately shape the disposition of his or her interest." 7 *Collier on Bankruptcy* ¶ 1109.01 (Lawrence P. King, 15th ed. rev.1996). The Third Circuit has interpreted the language of § 1109(b) to confer upon a creditor's committee the absolute right to intervene in an adversary proceeding. *Official Unsecured Creditors' Committee v. Michaels (In re Marin Motor Oil, Inc.),* 689 F.2d 445 (3d Cir.1982) *cert. denied,* 459 U.S. 1206, 103 S.Ct. 1196, 75 L.Ed.2d 440 (1983); *see also In re Neuman,* 124 B.R. 155, 159–60 (S.D.N.Y.1991) ("I agree that *Marin* is still good law and find its analysis persuasive. Based on the language of § 1109(b), I find that Congress intended to grant an absolute statutory right of intervention to creditors [in adversary proceedings]....").

#### B. Rule 7024—Intervention:

Rule 7024 of the Bankruptcy Code provides that Rule 24 of the Federal Rules of Civil Procedure applies in adversary proceedings.

 Rule 24 provides in pertinent part: (a) Intervention Of Right. Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an uncondi-

tional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

(b) Permissive Intervention—Upon timely application anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) *when an applicant's claim. or defense and the main action have a question of law or fact in common ....* In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

F.R.Civ.P. 24 (emphasis added). To satisfy Rule 24(a)(2), the putative intervenor must show (1) its application is timely; (2) it has a direct interest in the subject matter of the litigation; (3) its interest would be impaired by disposition of the action without its involvement; and (4) its interest is not adequately represented by any existing party. *See Riley . v. Simmons,* 839 F.Supp. 1113, 1118 (D.N.J.1993), *rev'd on other grounds,* 45 F.3d 764 (3d Cir.1995). Under Rule 24(b), "intervention is proper where there is a showing that the applicant's claim has a question of law or fact in common with the main claim." *Id.* at 1121. Where permissive intervention is sought, "[t]he Court must consider 'whether the intervention will unduly delay or prejudice that adjudication of rights of the original parties.' " *Brody By and Through Sugzdinis v. Spang,* 957 F.2d 1108 (3d Cir.1992).

#### C. Rule 2018—Intervention: Right to be Heard:

 Rule 2018 permits "intervention of an entity ... not otherwise entitled to do so under the Code or this Rule." *See* Fed.

---

Seeking Class Action certification is being held in abeyance pending certain discovery.

R.Bankr.P. 2018 Advisory Committee Notes (1983). In pertinent part, Rule 2018 provides:

> (a) Permissive Intervention—In a case under the Code, after hearing on such notice as the court directs and for cause shown, *the court may permit any interested entity to intervene generally or with respect to any specified manner.*

Fed.R.Bankr.P. 2018 (emphasis added). The court may exercise its discretion when granting permissive intervention to the moving party. *In re Addison Comm. Hosp. Auth.,* 175 B.R. 646, 651 (Bankr.E.D.Mich.1994); *see also In re Benny,* 791 F.2d 712 (9th Cir.1986); *In re Charter Co.,* 50 B.R. 57 (Bankr.W.D.Tex.1985). The test to determine whether a party is a "party in interest" is "whether the prospective party in interest has sufficient stake in the outcome of the proceeding so as to require representation." *In re Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir.1985). As with F.R.Civ.P. 24, determining whether undue delay to the original parties will result is a primary consideration. *See* 9 *Collier on Bankruptcy* ¶ 2018.05[2] (15th ed.1997). To facilitate that consideration, the court has discretion to limit the scope of the intervenor's participation. *Id.; see In re Public Service Co. of N.H.,* 88 B.R. 546 (Bankr.D.N.H.1988).

■ Courts have looked to various factors to allow intervention including 1) whether the moving party has an economic or similar interest in the matter; 2) whether the interest of the moving party are adequately represented by the existing parties; 3) whether the intervention will cause undue delay to the proceedings; and 4) whether the denial of the movant's request will adversely affect their interest. *See In re Ionosphere Clubs, Inc.,* 101 B.R. 844, 853 (Bankr.S.D.N.Y.1989); *In re Torrez,* 132 B.R. 924, 936 (Bankr. E.D.Cal.1991); *In re City of Bridgeport,* 128 B.R. 686, 687–88 (Bankr.D.Conn.1991).

## II. Application to the Moving Parties

### A. *Chapter 11 Trustee's Motions to Intervene in SIPA Proceedings.*

The Chapter 11 Trustee argues that his motion to intervene with respect to all matters pertaining to the status, allowability, or validity of the claims of investors who invested in leases through representatives of FIEC and who have, or may have, claims under SIPA should be granted pursuant to § 1109(b) or, alternatively, Rule 2018(a).[3]

■ The Chapter 11 Trustee begins, as does the Unsecured Creditors' Committee, discussed *infra,* by proffering the argument that intervention is proper pursuant to § 1109(b) as Chapter 11 Trustee is clearly a "party in interest." However, the language of § 1109(b) specifically states that a party in interest may be heard "on any issue in a case *under this chapter,*" 11 U.S.C. § 1109(b)(emphasis added). As both the SIPC and SIPA Trustee correctly assert, Section 1109 of the Code only applies to cases under Chapters 9 and 11 of the Bankruptcy Code. 11 U.S.C. §§ 103(f) and 901(a). Section 15 U.S.C. § 78fff(b) provides in pertinent part:

> To the extent consistent with the provisions of this chapter, a liquidation proceeding shall be conducted in accordance with, and as though *it were being conducted under Chapters 1, 3 and 5* and subchapters I and II of *Chapter 7* of title 11 . . . .

15 U.S.C. § 78fff(b) (emphasis added). A SIPA proceeding is conducted as a liquidation under Chapter 7. *See In re Lloyd Securities, Inc.,* 75 F.3d 853, 858 (3d Cir. 1996). Accordingly, reliance on Section 1109(b) as a vehicle to intervene is improper in a SIPA proceeding. The Class Plaintiff's motion seeking class action certification is a contested matter under Bankruptcy Rule 9014. Therefore, whether the parties may intervene in that contested matter must be determined under Rule 2018(a). *See In re Torrez,* 132 B.R. at 936 ("[in] a contested matter, permissive intervention is governed by the provisions set out in Rule 2018(a)").

In support of his request for permissive intervention, the Chapter 11 Trustee offers that he possesses an economic or similar interest in this matter because the extent of FIAC's liabilities will be significantly decreased if the Investors are treated as cus-

---

**3.** The SIPA proceeding is not an adversary proceeding, therefore Rule 24 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7024 is inapplicable.

tomers of FIEC with either claims for cash or securities. Additionally, intervention by the Chapter 11 Trustee is consistent with his statutory duties set forth in Section 1106 of the Code. To ensure that he complies with his duties, he must intervene in an attempt to preserve the assets of the estate and to maximize the distribution to the creditors. Finally, the Chapter 11 Trustee's intervention will insure adequate representation of those creditors who may not otherwise possess the resources to hire counsel.

■ The SIPA Trustee asserts that the FIAC Trustee lacks standing under *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), since the Chapter 11 Trustee has no financial interest in the adjudication of the claims of the lease assignment investors, and should not be permitted to intervene. The argument continues that since the claims against the FIAC estate will remain the same whether the claims are determined to be held by the Lease Assignment Claimants or the SIPA Trustee as Subrogee and Assignee, the FIAC estate will not be affected from the outcome of the litigation concerning the SIPA coverage. Accordingly, the Chapter 11 Trustee has no interest and therefore no right to intervene. Finally, the SIPA Trustee contends that the only interest the Chapter 11 Trustee seeks to protect is an economic interest in reducing the liability of the FIAC estate for the claims of lease holders. The SIPA Trustee contends that by advancing this interest, the Chapter 11 Trustee would resort to reviewing and evaluating every claim filed and this in turn will unduly delay the proceedings. The SIPA Trustee further contends that unduly delaying the proceedings warrants the Court's denying the Chapter 11 Trustee's intervention in the SIPA proceedings.

Similarly, the SIPC argues that the Chapter 11 Trustee is not an "interested party" in the determination of claims for protection as customers in the SIPA liquidation proceeding. SIPC argues that Chapter 11 Trustee may only pursue the rights of the FIAC estate and not those of FIAC's creditors. Therefore, the Chapter 11 Trustee has no

standing in the SIPA proceedings and should not be allowed to intervene.

Both the SIPC and Trustee rely on *Caplin* and a line of subsequent decisions in support of their positions. In *Caplin*, a Chapter X trustee brought suit against indenture trustee for debtor's debentures based upon indentured trustee's failure to fulfill obligations under the indenture, and also filed counterclaim against indenture trustee in reorganization proceedings. The Supreme Court held that the Chapter X trustee did not have standing to assert claims on behalf of holders of debentures issued by the debtors. *Caplin*, 406 U.S. at 434, 92 S.Ct. at 1688. The Court continued that the Chapter X trustee only has authority to pursue claims belonging to the estate. *Id.* at 428–30, 92 S.Ct. at 1685–86.

In *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2nd Cir.1995), a Chapter 11 trustee sued debtors' accountants and law firms alleging breach of contract and fiduciary duty, negligence, negligent misrepresentation, fraud and violations of Racketeer Influenced and Corrupt Organization Act (RICO) arising out of the law firms' and accountants' participation with debtors in a "Ponzi" scheme in connection with an offer and sale of limited partnership interests. Relying on *Caplin*, the Second Circuit found that the trustee lack standing to bring claims against the accountants. *Hirsch*, 72 F.3d at 1093. The Court reasoned that since the fraudulent misrepresentations were contained in the private placement memoranda to the debtor's investors, the claims were property of the investors and could only be asserted by the investors and not the trustee. *Id.* at 1094.

Next, the SIPC and SIPA Trustee cite to *E.F. Hutton & Co., Inc. v. Hadley*, 901 F.2d 979 (11th Cir.1990). In *Hadley*, the bankruptcy trustee of a dealer of government-backed mortgage securities sought to bring a negligence suit for claims arising out of a "Ponzi" scheme. The court held that the trustee lack standing to sue as the causes of action belonged to the defrauded investors, not the debtor's estate. *Id.* at 985. SIPC asserts that the instant Trustee, as did the trustee in *Hadley*, is attempting to act outside the scope of the trustee's capacity as

representative of the estate as set forth in § 323 of the Code. SIPC contends that the Trustee seeks to act for the benefit of FIAC's creditors, rather than the FIAC estate.

Lastly, the SIPC and SIPA refer the court to *Goldin v. Primavera Familienstiftung, TAG Associates, Ltd. (In re Granite Partners, L.P.)*, 194 B.R. 318 (Bankr.S.D.N.Y. 1996). Mr. Goldin, the Chapter 11 Trustee in the instant case served in a similar capacity in *Granite Partners*. There, Mr. Goldin sought to bring suit against brokers who allegedly aided and abetted the debtor's controlling equity holder in his alleged acts of mismanagement, waste and breach of fiduciary duty. The court held that since the cause of action accrued to the creditors of the debtor, and not the debtor itself, Mr. Goldin did not have standing to bring suit against the brokers. *Id.* at 328. The SIPC and SIPA Trustee maintain that Mr. Goldin is attempting the same tactics here.

The cases cited by the SIPC and the SIPA Trustee are distinguishable from the present case as each involved a trustee taking some affirmative steps to assert the claims of third parties. Here, the Chapter 11 Trustee seeks merely to intervene to insure the validity and classification of claims which could affect the administration of the FIAC estate. The Chapter 11 Trustee does not seek to advance the interest of any one creditor of the FIAC estate or the entire class of FIAC creditors, rather, the Chapter 11 Trustee intends to advance the interest of the FIAC estate. As stated in the reply brief of SIPA Trustee, "[a] trustee simply may only maintain a general claim which inures to the benefit of the entire estate and not on behalf of specific creditors." (*See* SIPA Trustee's Memorandum of Law in Opposition to Motions of the Chapter 11 Trustee and the Official Committee of Unsecured Creditors of First Interregional Advisors Corporation to Intervene in SIPA Proceeding of First Interregional Equity Corporation at p. 9)(citing *Hutzelman v. United States Farmers Home Admin., Dep't of Agric. (In re North East Projects, Inc.)*, 133 B.R. 59, 60 (Bankr.W.D.Pa.1991)). That is exactly what the Chapter 11 Trustee seeks to do here, act for the benefit of the entire FIAC estate. The court therefore finds that *Caplin* and its line of cases are not analogous here as the Chapter 11 Trustee has not, as yet, attempted to assert the claim of a third party or a non-bankruptcy estate claim.

■ The court next addresses the argument that the Chapter 11 Trustee lacks an economic interest in the case and therefore is not an interested party. SIPC and SIPA Trustee point to the language of both 11 U.S.C. § 509(a) and 15 U.S.C. § 78fff–2(b) and § 78fff–3(a) that any investor's claim paid by SIPA will result in SIPC subrogating to the claim of the settled creditor, and therefore, no reduction of the liability of the FIAC estate will result regardless of the outcome of the SIPA proceeding.[4] *See Securities Exch. Comm'n v. Albert & Maguire Sec.*, 560 F.2d 569, 574 (3d Cir.1977)(holding that "the trustee and SIPC stand not in the shoes of the debtor ... but rather, in those of the customer."). However, this fact alone is not dispositive of the issue that the Chapter 11 Trustee lacks an economic or similar interest in the proceedings. The Trustee argues, the subrogated claims of SIPC can possibly be classified separately from customers of FIAC in FIAC's reorganization plan. *See John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assoc.*, 987 F.2d 154, 158 (3d Cir.1993); ("the classification of the claims or interests must be reason-

---

4. 11 U.S.C. § 509(a) provides as follows:

(a) except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has a secured, a claim of creditor against the debtor, and that pays such a claim, is subrogated to the rights of such creditor to the extent of such payment.

15 U.S.C. § 78fff–2(b) provides in pertinent part:

Any payment or delivery of property pursuant to this subsection may be conditioned upon the trustee requiring claimants to exe-cute, in a form to be determined by the trustee, appropriate receipts, supporting affidavits, releases and assignments...

15 U.S.C. § 78fff–3(a) provides in pertinent part:

To the extent moneys are advanced by SIPC to the trustee to pay or otherwise satisfy the claims of customers, in addition to all other rights it may have at law or in equity, SIPC shall be subrogated to the claims of such customers with the rights and priorities provided in the chapter...

able...The Code does not necessarily prohibit the placement of similar claims in different classes"). *Matter of Jersey City Med. Ctr.*, 817 F.2d 1055, 1061 (3d Cir.1987)(same). This potential to separate the classification of claims between customers' claims and SIPC's subrogated claims in a FIAC reorganization plan is sufficient for the court to conclude that the Trustee has an economic or similar interest in the SIPA proceedings.[5]

But of greater concern to the court is the fact that the exact amount of outstanding claims and even the composition of the claim amounts is still very much uncertain. The Chapter 11 Trustee has received approximately 1,300 responses from creditors asserting more than $108 million in claims. A large amount of the claims have yet to be reconciled with the records of FIEC and FIAC. The claims already filed merely represent the beliefs of the creditors to what extent and for what obligation they are owed by FIEC or FIAC. Until the certainty of the claims and whether the FIEC or FIAC estate is liable warrants a finding that the Chapter 11 Trustee has an economic or similar interest in the proceedings.

■ Having concluded that the Chapter 11 Trustee has proper standing to intervene, the court focuses on whether the instant facts warrant the court granting the permissive intervention request. However, when the request of the Chapter 11 Trustee is evaluated against the factors enunciated in *In re Ionosphere*, 101 B.R. at 853–54, the court finds that a sufficient basis exists to warrant granting the Chapter 11 Trustee's motion to intervene in the SIPA proceedings. Contrary to SIPC's argument that allowing the Trustee to intervene will result in a duplication of effort resulting in increased attorney fees, the court finds that granting the Chapter 11 Trustee's motion to intervene will not cause an undue delay in the proceedings or prejudice the parties. In fact, it is the court's opinion that just the opposite will result. The Chapter 11 Trustee has been actively involved in the proceedings from the

outset. He has on numerous occasion provided valuable information to all the parties and is intimately familiar with the facts and history of this matter. Conversely, the ramifications of the exclusion of the Chapter 11 Trustee from the SIPA proceedings are great. The wealth of information that the Chapter 11 Trustee can provide, as well as accumulate, while actively participating in the SIPA action could greatly expedite the administration of both the SIPA proceedings and the FIAC estate. The two proceedings are so closely intermingled that logic suggests no other conclusion that the Chapter 11 Trustee should be permitted to intervene. While the concerns of the SIPC are valid that a review by the Chapter 11 Trustee of all the claims filed in the SIPA action to ensure ·their accuracy could unduly burden and impede the proceedings, it is within the courts discretion to limit the scope of the Chapter 11 Trustee's intervention. *See In re Public Service Co. of N.H.*, 88 B.R. 546 (Bankr.D.N.H.1988). To the extent that Bankruptcy Rule 7024 (applicable to adversary proceedings) renders Rule 24(b) applicable, these same factors support permissive intervention under Rule 24(b).

Accordingly, the motion of the Chapter 11 Trustee to intervene with respect to all matters pertaining to the status, allowability, or validity of the claims of investors who invested in leases through representatives of FIEC and who have, or may have claims under SIPA will be granted. Additionally, in response to, and in an attempt to alleviate the concerns of the SIPA Trustee that the Chapter 11 Trustee will interrupt the timeliness of these proceedings by examining all filed claims, the Court retains the discretion to limit the scope of the Trustee's participation in the SIPA proceeding as the particular facts develop in the future.

*B. Unsecured Creditors' Committee Motions to Intervene in SIPA Proceedings.*

The Unsecured Creditors' Committee also argues that its motion to intervene with re-

---

**5.** While the court has concluded that the Trustee has an economic interest in the SIPA proceedings based on the possibility that the Trustee's could distinguish customers' claims from SIPC's subrogated claims via a separate classification in the reorganization plan, whether the Trustee can *actually* separately classify the claims in the reorganization plan is too premature to decide here. Accordingly this opinion does not reach that issue.

spect to all matters pertaining to the status, allowability, or validity of the claims of investors who invested in leases through representatives of FIEC and who have, or may have claims under SIPA should be granted pursuant to Section 1109(b) of the bankruptcy Code or, alternatively, Rule 2018(a).

The Unsecured Creditors' Committee initially proffers the same argument as the Chapter 11 Trustee, that intervention is proper pursuant to § 1109(b) as the Unsecured Creditors' Committee is a "party in interest" with a right to intervene. For the same reasons stated in evaluating the Chapter 11 Trustees' argument under § 1109(b), the Unsecured Creditors' Committee's reliance on § 1109(b) is misplaced. Again, the proper method of intervention to evaluate the Unsecured Creditors' Committee's motion is under Rule 2018(a).

■ Neither the SIPA Trustee nor the SIPC offers an argument that intervention by the Unsecured Creditors' Committee is improper under Rule 2018(a). The Unsecured Creditors' Committee satisfies the requirements to allow the Court to grant permissive intervention in the SIPA proceedings with respect to all matters pertaining to the status, allowability, or validity of the claims of investors who invested in leases through representatives of FIEC and who have, or may have claims under SIPA. The Unsecured Creditors' Committee is certainly a "party in interest" in the resolution of the SIPC as they seek to effectuate the greatest payment of customer claims from the FIEC estate. Additionally, the existing parties do not adequately represent the Unsecured creditors' Committees interests. Finally, intervention by the Unsecured Creditors' Committee at this stage of the proceedings will not cause a delay or unduly burden the proceedings. Accordingly, the motion of the Unsecured Creditors' Committee to intervene in the SIPA proceedings of FIEC with respect to all matters pertaining to the status, allowability, or validity of the claims of investors who invested in leases through representatives of FIEC and who, or may have, claims under SIPA should be granted. To the extent that Bankruptcy Rule 7024 (applicable to adversary proceedings) renders Rule 24(b) applicable, these same factors support permissive intervention under rule 24(b).

The Court here also retains the discretion to limit the scope of the committee's participation in aspects of the SIPA proceeding as the particular facts develop in the future. In so ruling, this Court has rejected the objectors request that the Court reserve its opinion with respect to either intervention motion until this Court hears and determines the pending class proof of claim certification motion as the Court deems the intervention motions ripe and timely for adjudication.

### CONCLUSION

For the foregoing reasons, the Motions of the Chapter 11 Trustee and the Unsecured Creditors' Committee of FIAC to intervene in the SIPA proceedings of First Interregional Equity Corporation ("FIEC") with respect to all matters pertaining to the status, allowability, or validity of the claims of investors who invested in leases through representatives of FIEC, or may have claims under SIPA are GRANTED.

An Order in accordance with this Court's decision shall be submitted.